# SUPREME COURT—IN BANCO.

## APRIL TERM—1874.

*Allen, Ch. J., Harris and Judd, J. J.*

IN THE MATTER OF THE ESTATE OF HIRAM MAIKAI, DECEASED, INTESTATE,—ON APPEAL FROM THE DECISION OF JUSTICE HARTWELL.

THE Probate Court will allow charges for legal services when such are necessary, and will allow them to the administrator himself, if he is a lawyer, in such cases as they would be allowed to an administrator employing a lawyer, but every case must be determined by its own circumstances.

Justice HARRIS delivered the decision of the Court as follows:

This is an appeal taken by the administrator, a lawyer by

In the matter of the Estate of Hiram Maikai.

profession, from a disallowance of his fees as a professional man, by Justice Hartwell, as follows:

Legal services in procuring letters of administration...................$25 00
Legal services in sale of real estate.............................................. 25 00

The legal services in procuring letters of administration are filling up the form of a petition; filling up and filing a schedule of property, which in this case was extremely limited; filing an affidavit of publication, notice of hearing, a notice to creditors, and attending on the day appointed for hearing, and the fee, if to be allowed at all, would be reasonable.

The property of the deceased mainly consisted of two pieces of land, which were under mortgage to secure the payment of $758, which brought at public sale $915.

The widow of the deceased likewise paid into the administrator's hand $72.25; which she probably paid under the idea of helping to pay the debt on the land, or under the impression that she must give up all that she had, and be allowed nothing for her own maintenance, during the time immediately subsequent to her husband's decease.

The deceased's father likewise paid in.....................................$ 20 00
The land as has been said above brought................................ 915 00
_____
The debt upon it was, as has been said before........................ 758 00
And the costs claimed for selling it were................................ 235 70
_____
$993 70

So the widow gave up the land, which was considered by the money lender, as it appears correctly, to be a sufficient security for the debt, and then gave up her little fund of $72 to pay these enormous costs.

If such costs were necessary, in order to procure the sale of the land, it certainly would have been much better for the woman to have taken the $20.00 which her father-in-law owed her husband and paid Lewers & Dickson's account of $13.50 and let the mortgagee enter into possession of the

In the matter of the Estate of Hiram Maikai.

land, and do with it as he might see fit; she would thus have saved for her own use, the $72.25 which she had in her own hands and the $6.50, which would have remained out of the sum paid by her father-in-law. This certainly would have been for the widow a much better mode of administration.

The account brought up in a little different order from that in which it is presented would stand thus:

Cr.

| | | |
|---|---|---|
| Cash proceeds of real estate at Pauoa, sold at auction............ | $ ·915 | 00 |
| Cash from Maikai's father................................................... | 20 | 00 |
| Cash from the widow.......................................................... | 72 | 25 |

Dr.                                                                    $1,007 25

| | | |
|---|---|---|
| Cash paid debts secured by mortgage on the land........ ...........$753 | 00 |
| Debt Lewers & Dickson................... .......................................... | 13 | 50 |
| ·Costs of Court incidental to procuring the order of sale... ...:..... | 21 | 50 |
| Advertising notice to creditors, there being only one, for $13.50, in addition to those secured by mortgage................ ...... | 2 | 50 |

$795 50

| | |
|---|---|
| Credit, brought forward...................... ...................... .............. | $1,007 25 |
| Debt,        "           "       ....................... ...................... .............$795 50 |
| Cash for registry of a deed of the land and release of mortgage which the widow would not care whether it was released or not under the circumstances of this case................ ........................ .............. | 6 50 |
| Administrator's commissions.......... .............. ...........$91 50 | |
| Fees as a lawyer for his legal services............... 50 00 | |
|                                                              ——— 141 50 | |
| Commissions and expenses of auctioneer in sale of the land.....,...... ...... .................. ..................... ...... ...... | 63 75 |
|                                                              ——— $1,007 25 | |

If the Court had to review the whole account it is a matter of doubt whether they would allow the auctioneer's commissions in this case. They would allow some remuneration for an auctioneer in case the estate appeared to be benefitted by his exertions, but the statute allows the adminis-

In the matter of the Estate of Hiram Maikai.

trator himself to sell at public auction; and it is most certainly his duty to make all preparations for a sale, such as preparing descriptions of land, examining title and making abstract of it, making the deeds, collecting, and finally paying out the money. One would think that it would be very easy to make a bargain with the auctioneer to "cry the estate" even if his services should appear to be at all necessary.

It is difficult to see why two commissions should be paid, more especially when the statute commission paid to the administrator is so large as it is, by our statute.

Certainly the administrator did not receive at any time the gross sum which the land brought, but received it less the $63.75 charged for auctioneer's commissions and expenses, so there is no reason why he should receive a commission of $6.37 on that sum. But we do not think ourselves called upon to review items not brought up on appeal.

The Court would allow professional charges for services rendered to the estate in all cases where such services are necessary; and would allow them to the administrator if he should be a lawyer, whensoever they would allow them to an administrator who is not a lawyer. With regard to such allowances every case must stand by itself and no fixed and invariable rule can be laid down.

But in this case it is apparent that the administration was and could be of no benefit to the widow, who must pay these fees. If the creditors applied to counsel for advice they should pay their own counsel fees.

If the widow applied, she should have been advised as set forth above; or to offer creditors to join in the sale; or to allow the mortgage to be foreclosed; and thus avoid these excessive commissions; and in case that foreclosure had been resorted to, the residuum, if there should have been any, might have been paid into Court to await her further action.

The counsel's fees cannot therefore be allowed in this case.

The administrator may be discharged and his bond cancelled, whenever he shall furnish the receipt of the widow for the said sum of $50.00 and pay the costs of this appeal.

S. B. Dole administrator, appellant.

Honolulu, April 28th, 1874.